IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| DANIEL PAULSRUD,<br><br>Petitioner,<br><br>vs.<br><br>LYNN GUYER; ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>Respondents. | Cause No. CV 20-43-GF-DLC-JTJ<br><br>FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

On Thanksgiving Day in 2009 in Fort Benton, Montana, Daniel Paulsrud shot and killed his girlfriend, Leslie Davidson ("Leslie"), and then shot himself in the face in an attempted murder-suicide. In March of 2011, a Chouteau County jury found Paulsrud guilty of deliberate homicide. The District Court sentenced Paulsrud to the Montana State Prison for a total of 110 years, without the possibility of parole.[1]

On May 26, 2020, Paulsrud filed an action in this Court under 28 U.S.C. §

---

[1] The additional procedural history of this matter has been set forth at length in a prior order of the Court and will not be repeated herein.  See e.g., (Doc. 5 at 2-3.)

1

2254, accompanied by a brief in support.² Upon review of the materials, it appeared the claims in Paulsrud's petition were procedurally defaulted and that the petition was untimely. Paulsrud was directed to show cause as to why his petition should not be dismissed.³ Paulsrud filed a response and a supplement.⁴ As explained below, Paulsrud has not demonstrated an adequate basis to excuse the procedural hurdles; accordingly, this matter should be dismissed.

## I.   Analysis

The Court is required to screen all actions brought by prisoners who seek relief. 28 U.S.C. § 1915(a). The Court must dismiss a habeas petition or portion thereof if the prisoner raises claims that are legally frivolous or fails to state a basis upon which relief may be granted. 28 U.S.C. § 1915A(b)(1), (2). This Court previously found that Paulsrud filed his federal habeas petition more than 6 ½ years too late.⁵ Additionally, it was noted that all of the claims in Paulsrud's habeas petition were procedurally defaulted.⁶ Paulsrud does not dispute either of these findings but argues that the procedural bars should not preclude consideration of his petition.⁷ Paulsrud provides his own account of the facts surrounding the

---

² See, (Docs. 1 & 1-1.)
³ (Doc. 5.)
⁴ (Docs. 8 & 9.)
⁵ See, (Doc. 5 at 3-4.)
⁶ *Id*. at 6-8.
⁷ See generally, (Doc. 8.)

shooting of Leslie and his attempted suicide.[8] Paulsrud then asserts: (1) he is actually innocent; (2) there was insufficient evidence to convict him of deliberate homicide; and (3) he was incoherent during all critical stages of his state trial and sentencing.[9]

### Paulsrud's Account of the Events

According to Paulsrud, on Thanksgiving Day 2009, he and Leslie had gone deer hunting near Fort Benton but did not have any luck filling their tags.[10] They returned to Leslie's home, where she proceeded to get into an argument with her daughter, Amanda. Paulsrud went to a separate residence to unload the hunting gear. Leslie then arrived with beer. The couple shared a couple of beers and engaged in pleasant conversation about their future and Leslie's children. Another of Leslie's daughters, Kailee, stopped by to get car keys.

Paulsrud and Leslie continued their conversation. Paulsrud picked up a .357 revolver that had been sitting on the dining room table. The pistol accidentally fired; Paulsrud had forgotten to unload the gun. At first, Paulsrud believed the shot had missed Leslie. But when she fell over, Paulsrud rushed to her side and could see she was near death. He told her he loved her and he was sorry. Leslie died as a result of the gunshot wound to her chest.

---

[8] *Id*. at 1-3.
[9] *Id*. at 3.
[10] See generally, (Doc. 8 at 1-3.)

Paulsrud explains he felt deep immediate grief and sorrow and corresponding mental distress over the couple's lost future. This caused him to make the decision to end his own life. Paulsrud drank a glass of vodka and then fired a pistol under his chin. He only has vague recollections of what occurred after self-inflicting the wound. Paulsrud was left with severe injuries and was unable to speak or communicate. Due to his injuries, Paulsrud could not present this testimony during trial.

### i. Actual Innocence

A petitioner claiming actual innocence must satisfy the *Schlup* standard by demonstrating "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Lee v. Lampert*, 653 F. 3d 929, 938 (9th Cir. 2011)(en banc). In the federal habeas context "actual innocence" means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). To make a credible claim of actual innocence, petitioner must produce "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The habeas court then considers all the evidence: old and new, incriminating and exculpatory, admissible at trial or not. *House v. Bell*, 547 U.S. 518, 538 (2006). On this complete record, the court makes a

"probabilistic determination about what reasonable, properly instructed jurors would do." *Id*. (quoting *Schlup*, 513 U.S. at 330).

Paulsrud has not provided this Court with new evidence of actual innocence. Rather he provides his own conclusory and self-serving statement about the events leading up to the death of Leslie. But the evidence presented during trial conflicts with Paulsrud's account of the "pleasant" afternoon he spent with Leslie and the purported accidental nature of the shooting.[11]

The State's theory at trial was that the death of Leslie was deliberate and the culmination of a volatile and violent on-and-off six-year relationship.[12] Conversely, much like Paulsrud argues before the Court, the defense contended that Leslie's death was a tragic accident.[13] The defense also claimed the State failed to prove that Paulsrud knew the gun used to kill Leslie was loaded.[14]

Several of Leslie's friends testified at trial regarding their concerns surrounding the relationship between Paulrsrud and Leslie. One friend told the jury that she warned Leslie that "one of these days" Paulsrud would kill her.[15] The testimony presented painted a picture of a rocky relationship punctuated by tense

---

[11] The following facts are taken from the brief Paulsrud filed on direct appeal, which cited to the trial transcript. See, *State v. Paulsrud*, DA 11-0395, Appellant's Br. (filed Jan. 3, 2012). All state court briefing available at Montana Supreme Court Docket: https://dataportal.mt.gov/ (accessed March 15, 2021).
[12] *Id*. at 3, citing trial transcript ( "trns.") at 191-96.
[13] *Id*. at 3-4; trns. at 197.
[14] *Id*. at 10; trns. at 588-89.
[15] *Id*. at 4-5; trns. at 260-63.

arguments and alcohol use. Two other friends testified that Leslie had come to stay with them on multiple occasions, following fights with Paulsrud.[16] A neighbor testified that Paulsrud was drinking every time he saw him and usually had a gun nearby. The neighbor frequently heard arguments between Paulsrud and Leslie and testified that sometimes the arguments were "intense."[17]

On the day of the shooting, Leslie had plans to go with her daughter Kailee and Kailee's grandmother to a family Thanksgiving dinner in Great Falls. Leslie subsequently called Kailee to say she would be staying in Fort Benton with Paulsrud. Kailee and the grandmother then went by the residence. Kailee testified that Paulsrud had been drinking and that her mother had been crying.[18]

Amanda testified that she was on the phone with her mother on the day of the shooting and her mother was upset. She could hear Paulsrud in the background calling Leslie names like "whore," "slut" and "bitch." Amanda said Paulsrud had been drinking and that she spoke to Paulsrud on the phone in an effort to diffuse the situation. At one point during the conversation with her mother, the phone hit the floor and went dead. Leslie called Amanda back twenty minutes later; she was crying and said Paulsrud had hit her.[19]

---

[16] *Id*. at 5; trns. at 268-72; 283-85.
[17] *Id.* at 5; trns. at 274-79; 281-83.
[18] *Id*. at 6; trns. at 206-10.
[19] *Id*. at 6; trns. at 495-99; 500-02.

A firearms examiner from the State Crime Lab examined the revolver used to shoot Leslie. She found it to be in proper working order and testified it could not be fired unless one pulled the trigger.[20] Mark Hilyard, an agent with the Division of Criminal Investigation, concluded following his investigation that the shooting was not accidental.[21] He noted Paulsrud told him the shooting was accidental, but that Paulsrud also stated the pistol had "two bullets left in reserve."[22] The pathologist who performed the autopsy of Leslie testified that a bruise on her left cheek was consistent with being struck on the face November 26, 2009.[23]

As set forth above, a petitioner asserting actual innocence as a gateway to a procedurally defaulted or untimely claim[24] must establish that, in light of the new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327. But rather than provide new evidence to the Court, Paulsrud's actual innocence claim rests upon his own self-serving statement given over a decade after the underlying events occurred. Moreover, the statement mirrors the defense which was presented to the jury and rejected. The purpose of the actual innocence exception is to allow

---

[20] *Id*. at 8; trns. at 436-40.
[21] *Id*. at 10; trns. at 423; 431.
[22] *Id*.; trns. 425.
[23] *Id*. at 9; trns. at 461-62.
[24] See, *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013).

review of claims where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." See, *Johnson v. Knowles*, 541 F. 3d 933, 937 (9th Cir. 2008)(citing *Schlup* for the proposition that "the miscarriage of justice exception is limited to those *extraordinary* cases where the petitioner asserts his innocence and establishes that the court cannot have confidence in the contrary finding of guilt")(emphasis in original). Paulsrud has presented no new evidence to this Court which would undermine confidence in the jury's verdict of guilty on the charge of deliberate homicide. Accordingly, his actual innocence claim fails.

      ii.      **Cause and Prejudice**

Paulsrud also seems to argue that his procedural shortcomings have resulted from his mental and physical conditions.[25] Paulsrud contends that the bullet removing half of his face and his upper jaw constitutes an extraordinary circumstance.[26] He also asserts that he had been prescribed mind-altering drugs and pain medication, thus, not only did he have vision impairment and limited speech, his ability to understand and "be present" was also impacted.[27]

Ordinarily, "cause" to excuse a default exists if a petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to

---

[25] See, (Doc. 8 at 5.)
[26] *Id.*
[27] *Id.*

8

comply with the State's procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). The cause standard will be met, for example, where the claim rests upon a new legal or factual basis that was unavailable at the time of direct appeal, or where "interference by officials" may have prevented the claim from being brought earlier. *Carrier*, 477 U.S. at 488. "A habeas petitioner demonstrates prejudice by establishing that the constitutional errors 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Schneider v. McDaniel*, 674 F.3d 1144, 1153 (9th Cir. 2012) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982). A petitioner has the burden of proving both cause and prejudice. *Coleman*, 501 U.S. at 750.

A petitioner's pro se status does not establish cause, nor does the fact that he is illiterate. *Hugues v. Idaho State Bd. Of Corrections,* 800 F. 2d 905, 909 (9th Cir. 1986). In *Tacho v. Martinez*, 862 F. 2d 1376 (9th Cir. 1988), the Ninth Circuit similarly concluded that a petitioner's diminished mental capacity, where he had access to assistance from other inmates did not establish cause: "if an illiterate petitioner's complete lack of assistance is not cause to excuse a procedural default, it necessarily follows that a literate pro se petitioner who has such assistance cannot establish cause." *Id*. at 1381. In *Schneider v. McDaniel*, 674 F. 3d 1144 (9th Cir. 2012), the Ninth Circuit explained: "The legal principle that we distill from *Hughes* and *Tacho* is that a pro se petitioner's mental condition cannot serve

9

as cause for a procedural default, at least when the petitioner on his own or with assistance remains 'able to apply for post-conviction relief to a state court.'" *Id*. at 1154.; see also, *Cudd v. State of Montana*; 1:17-cv-108-TJC, Or. at 18-21 (March 16, 2021)(this Court observed it was aware of no cases where a procedural default has been excused due to vision or health issues; also discussing application of *Hughes*, *Tacho*, and *Schneider*).

In the instant case, Paulsrud has demonstrated an ability to file two state postconviction actions,[28] as well as clearly articulating his claims before this Court. Moreover, it appears he has had the assistance of other prison inmates and an ADA legal assistant.[29] Thus, he cannot show that his limitations rendered him *completely unable* to comply with the state's procedures. See, *Schneider*, 674 F. 3d at 1154 (emphasis added). Because Paulsrud has not shown cause, this Court is not required to examine the existence of prejudice. *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, at 1123 n.10 (9th Cir. 1991).

### iii. Insufficiency of the Evidence

Paulsrud claims the State did not prove a deliberate act, namely that he intended to harm Leslie.[30] Paulsrud asserts the only argument that occurred on

---

[28] See e.g., (Doc. 5 at 2-3.)
[29] See, (Doc. 8 at 8.)
[30] (Doc. 8 at 5-6.)

10

Thanksgiving Day of 2009 was between Leslie and her daughter, Amanda.[31] Paulsrud claims there was no evidence to convict him and relies upon *Jackson v. Virginia*, 443 U.S. 307 (1979), in support of his argument.

     Paulsrud is correct that the Supreme Court's primary precedent on sufficiency of the evidence is *Jackson v. Virginia*, in which the Court held that "the Due Process Clause…protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Jackson*, 443 U.S. at 315, (quoting, *In re Winship*, 397 U.S. 358, 364 (1970)). The Supreme Court established that "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be…to determine whether the record evidence could reasonably support a finding of guilty beyond a reasonable doubt." 443 U.S. at 318. A court reviewing such evidence should not "ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt." *Id*. at 318-19. Rather, a reviewing court must evaluate "whether after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319 (citations omitted). The *Jackson* court also specified "that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution."

---

[31] *Id*. at 6.

*Id.*; see also, *U.S. v. Nevils*, 598 F. 3d 1158, 1164. Circumstantial evidence alone may be sufficient. *Maquiz v. Hedgpeth,* 907 F. 3d 1212, 1218 (9th Cir. 2018). The Ninth Circuit has noted, however, that "[s]peculation and conjecture cannot take the place of reasonable inferences and evidence- whether direct or circumstantial." *Juan H. v. Allen*, 408 F. 3d 1262, 1275 (9th Cir. 2005).

Under these standards and based upon the analysis set forth in the sections above, the Court is highly skeptical that even if it were to consider the merits of this claim, Paulsrud could make the showing required by *Jackson* and its progeny. But that is not the analysis this Court is required to engage in. This claim is both untimely and procedurally defaulted and because Paulsrud has failed to make the requisite showing of actual innocence or cause and prejudice, this Court is without an avenue to review the claim.

### iv. Competency

Finally, Paulsrud argues that he was not mentally coherent during his trial and sentencing proceedings.[32] He further contends that he suffers from his disfigurement and that a "mountain" of medical records exists as Montana State Prison to support his claim.[33]

The Court would first observe that Paulsrud was represented by experienced

---

[32] (Doc. 8 at 7.)
[33] *Id.*

trial and appellate counsel and at no point during either or these proceedings was the issue of competency raised or was Paulsrud's competency challenged. See e.g., *State v. Paulsrud*, 2012 MT 180, 366 Mont. 62, 285 P.3d 505. But this claim, just like the sufficiency of the evidence claim, suffers from the same procedural shortcomings- it was never presented to the state courts and was not timely presented to this Court. Because Paulsrud has failed to provide a basis to excuse the procedural hurdles before him, this Court cannot review the claim.

## II. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 656 U.S. 134, 140-41 (2012) (quoting *Slack*, 529 U.S. at 484).

Paulsrud has not made a substantial showing that he was deprived of a constitutional right. He has failed to make a colorable claim of actual innocence or demonstrate the requisite cause and prejudice. Accordingly, his claims of incompetency and insufficient evidence are procedurally defaulted without excuse and time barred. Reasonable jurists would find no basis to encourage further proceedings at this time. There are no close questions and there is no reason to encourage further proceedings in this Court. A certificate of appealability should be denied.

Based on the foregoing, the Court enters the following:

### RECOMMENDATION

1. The Petition (Doc. 1) should be DISMISSED with prejudice.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

### NOTICE OF RIGHT TO OBJECT
### TO FINDINGS & RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Paulsrud may object to this Findings and Recommendation within 14 days. 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Mr. Paulsrud must immediately notify the Court of any change in his mailing

address. Failure to do so may result in dismissal of his case without notice to him.

DATED this 24th day of March, 2021.

> */s/ John Johnston*
> John Johnston
> United States Magistrate Judge