IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| DANIEL PAULSRUD, | CV 20–43–GF–DLC |
| Petitioner, | |
| vs. | ORDER |
| LYNN GUYER; ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

Before the Court is the Findings and Recommendation of United States Magistrate Judge John Johnston.  (Doc. 10.)  Judge Johnston recommends the Court dismiss with prejudice Petitioner Daniel Paulsrud's 28 U.S.C. § 2254 Petition, in which Paulsrud asks the Court to amend his State conviction for deliberate homicide with a deadly weapon to negligent homicide, or alternatively, grant him a new trial.  (Doc. 1.)  Judge Johnston further recommends that the Court deny a certificate of appealability ("COA").  (Doc. 10 at 13–14.)  Paulsrud timely objects.  (Doc. 11.)

## STANDARD OF REVIEW

Paulsrud is entitled to de novo review of those findings to which he specifically objects.  28 U.S.C. § 636(b)(1)(C).  Absent objection, the Court reviews for clear error.  *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th

- 1 -

Cir. 2003) (en banc); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).  Clear error review is "significantly deferential" and exists if the Court is left with a "definite and firm conviction that a mistake has been committed."  *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted).

## BACKGROUND

On March 16, 2011, a Choteau County jury convicted Paulsrud of deliberate homicide with a dangerous weapon.  *State of Montana v. Paulsrud*, 285 P.3d 505, 506 ("*Paulsrud I*").  The jury decided that Paulsrud used a handgun to shoot and kill his girlfriend, Leslie Davidson, before turning the weapon on himself in an attempted murder-suicide.  *Id.*  The evidence showed that when law enforcement found Paulsrud, he had a self-inflicted gunshot wound to his face and jaw and could not talk, but was otherwise able to "pantomime shooting himself under the chin and likewise indicated he had shot another person[.]"  *Id.*  Following the verdict, the judge sentenced Paulsrud to life in prison without the possibility of parole.  *Id.*

On direct appeal to the Montana Supreme Court, Paulsrud challenged only the legality of the parole restriction.  *Id.* at 507.  On August 21, 2012, the Court affirmed the lower court's sentence, finding that it offended neither Montana's statutory framework nor the State constitution.  *Id.* at 509.

Nearly seven years after the Montana Supreme Court issued its opinion on Paulsrud's direct appeal, he petitioned for a writ of habeas corpus in the State trial court on August 1, 2019.  (Doc. 1-2 at 2.)  The trial court first explained the time to file a petition for postconviction relief expires one year after a conviction becomes final, and that Paulsrud's petition contained no basis for waiving the one-year statute of limitations.  (*Id.* at 1–2.)  Next, it stated that state habeas relief is not available to attack the validity of a conviction or sentence "of a person who has been adjudged guilty of an offense in a court of record and has exhausted the remedy of appeal."  (*Id.* at 2 (citing Mont. Code Ann. § 46-22-101).)  In Paulsrud's case, the court concluded, he had exhausted his appeal remedies and had otherwise provided no argument that a "miscarriage of justice" should excuse his untimely petition.  (*Id.*)

About two months after the trial court denied Paulsrud's petition, he filed an original petition for writ of habeas corpus in the Montana Supreme Court on December 16, 2019.  *Paulsrud v. Guyer*, OP 19-0703 (filed Dec. 16, 2019) ("*Paulsrud II*").[1]  Like the trial court, the Supreme Court denied Paulsrud's petition, explaining that "habeas corpus cannot be used as a vehicle to collaterally

---

[1] Montana Supreme Court documents available at: https://courts.mt.gov/clerk (accessed May 28, 2021).

attack a conviction," which had been affirmed seven years before. *Paulsrud II*, OP 19-0703, 2019 WL 7398740 *1 (Dec. 31, 2019).

Paulsrud then filed the instant federal habeas Petition, pursuant to 28 U.S.C. § 2254, on May 25, 2020. (Doc. 1.) Here, he advances claims of: (1) ineffective assistance of counsel (Docs. 1 at 4; 1-1 at 7, 12–20); (2) Fourth Amendment violations (Doc. 1-1 at 20–30); (3) Eighth Amendment violations (Doc. 1-1 at 30–32); and (4) Due Process and Fifth Amendment violations (Docs. 1 at 4; 1-1 at 32–33). As noted at the outset, Paulsrud seeks relief either in the form of a reduced conviction to negligent homicide or a new trial. (Doc. 1 at 6.)

## DISCUSSION

The timeline of Paulsrud's postconviction efforts, both before State courts and before this Court, drives the viability of his Petition. After reviewing the materials Paulsrud filed, Judge Johnston noted that "it appeared the claims in Paulsrud's [P]etition were procedurally defaulted and that the [P]etition was untimely." (Doc. 10 at 2.) Accordingly, Judge Johnston directed Paulsrud to show cause as to why his Petition should not be dismissed. (Doc. 5.)

In his Response to Judge Johnston's Show Cause Order, Paulsrud did not dispute that his Petition is untimely and procedurally defaulted, but argued that his case falls within the "actual innocence" exception to the applicable statute of limitations and "extraordinary circumstances" otherwise exist to excuse his

procedural deficiencies. (Doc. 8 at 3–5.) He concluded by contending that the evidence at trial was insufficient to support a conviction, and moreover, that he was not mentally coherent during any phase of the prosecution against him. (*Id.* at 5–7.) After considering each argument, Judge Johnston determined that Paulsrud had failed to overcome the procedural bars to his Petition. (Doc. 10 at 2.)

Paulsrud objects to Judge Johnston's findings, broadly reasserting that: (1) he is actually innocent; and (2) that extraordinary circumstances excuse his procedural shortcomings. (*See generally* Doc. 11 at 2–7.) He goes on to expand the merits of the claims contained in his Petition, which he faults Judge Johnston for "completely disregard[ing]" in the Findings and Recommendation. (*Id.* at 7–8.)

Taking each argument related to the procedural propriety of the Petition in turn, the Court agrees with Judge Johnston that dismissal is appropriate on that basis. Thus, the Court does not reach the merits of Paulsrud's claims for habeas relief, including his claims of mental incompetence and insufficiency of the evidence. *See Schlup v. Delo*, 513 U.S. 298, 314 (1995) (procedural obstacles must be overcome before a federal court may address the merits of a habeas petitioner's claims).

## I.  Federal Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a one-year statute of limitations generally applies to prisoners'

petitions for writs of habeas corpus. *McQuiggin v. Perkins*, 569 U.S. 383, 388 (2013); 28 U.S.C. § 2244(d)(1).  In this case, the one-year clock started running on the later of: "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* at § 2244(d)(1)(A).  Paulsrud does not dispute that by this measure, the time to file his Petition expired on November 19, 2013.  *See Bowen v. Roe*, 188 F.3d 1157, 1158–59 (9th Cir. 1999) (holding the period for "direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner files such a petition).  Thus, Paulsrud agrees with Judge Johnston's assessment that his claims are untimely pursuant to the federal statute of limitations but argues that his untimeliness should be excused because he is "actually innocent" and that "extraordinary circumstances" acted to otherwise toll the statute of limitations.  (Docs. 8 at 3; 11 at 2.)

### A.    Actual Innocence

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment [to their petition for a writ of habeas corpus] is a procedural bar . . . or, as in this case, expiration of the statute of limitations." *McQuiggin*, 569 U.S. at 388.  Thus, actual innocence operates as an "equitable exception to AEDPA's limitations period." *Lee v. Lampert*, 653 F.3d

929, 932 (9th Cir. 2011).  A petitioner seeking to invoke the actual innocence

exception "must produce sufficient proof of his actual innocence to bring him

within the narrow class of cases implicating a fundamental miscarriage of justice."

*Id.* at 937 (citations, internal quotations marks, and ellipses omitted).

The actual innocence gateway is indeed narrow: a "petitioner must show that

it is more likely than not that no reasonable juror would have convicted him in the

light of [] new evidence."  *Id.* at 938 (citations omitted).  A claim of actual

innocence "requires a petitioner to support his allegations of constitutional error

with new reliable evidence—whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence—that was not

presented at trial."  *Schlup*, 513 U.S. at 324 (emphasis added).  Because such

evidence is usually unavailable, "claims of actual innocence are rarely successful."

*Id.*

Here, Paulsrud contends that he makes it through the narrow actual

innocence gateway by way of his own "eye-witness testimony that was not

developed at trial due to his mental and physical condition."  (Doc. 11 at 2.)  That

is, he argues that but for the nature of his gunshot injury at the time of trial, he

would have supplied evidence that he killed his girlfriend accidentally.  (*Id.*)  As

Judge Johnston summarizes, this theory was advanced to the jury at trial, albeit

without the benefit of Paulsrud's own testimony to support it.  (Doc. 10 at 5.)  For example,

> [i]n closing arguments, the defense argued that the state had failed to prove the shooting was anything other than accidental, and asserted there was a failure of proof as to whether Paulsrud knew the gun was loaded.  At the defense's request, the District Court instructed the jury on the lesser offense of negligent homicide.  However, the defense did not argue in closing that the shooting occurred as a result of negligence, and in fact disavowed this defense.  Counsel argued that there was no proof of the sort of gross deviation from the ordinary standard of care, as would be required for negligent homicide.  "They can't establish a gross deviation.  And even if he didn't know the gun was loaded, that's nothing more than an accident."

*Paulsrud I*, Appellant's Br. at 10–11 (filed Jan. 3, 2012) (citing trial transcript) (internal citations omitted).[2]  And although Paulsrud did not himself testify to his version of events—that the shooting was accidental—the investigating agent did. *Id.* at 9–10.  When cross-examination turned to the interview that took place two months after the shooting, Agent Mark Hilyard testified that he told Paulsrud that his conduct constituted deliberate homicide.  *Id.* at 10.  Paulsrud responded in writing that he "couldn't believe what had happened, and that the gun went off." *Id.*  Agent Hilyard went on to say that when he asked Paulsrud what was in the weapon, Paulsrud wrote "there were only two bullets left in reserve."  *Id.*  In

---

[2] Briefing available at the Montana Supreme Court's electronic docket: https://courts.mt.gov/courts/supreme/about (accessed June 7, 2021).

addition to Agent Hilyard's testimony, a recording of the interview was played on a DVD for the jury. *Id.* at 9–10.

Again, the question of "actual innocence" is not whether a theory could have been buttressed at trial had the defense proffered additional available evidence, but rather whether "it is more likely than not that no reasonable juror would have convicted [the petitioner] in the light of [] new evidence." *Lee*, 653 F.3d at 938. Here, Paulsrud offers only his own testimony that he did not intend to kill his girlfriend and that witnesses misconstrued the nature of their relationship prior to her death. (Doc. 11 at 5.)  If the Court granted Paulsrud the new trial he seeks, and he testified to his version events, his testimony would, at most, create a credibility dispute.  A reasonable juror could easily believe the state's version of events over his, notwithstanding his testimony to the contrary.  That is, a tumultuous relationship soaked in alcohol ended on Thanksgiving Day 2009 when Paulsrud hit his girlfriend and then deliberately shot and killed her. *Paulsrud I*, Appellant's Br. at 6–8.

In sum, while Paulsrud's proffered testimony would challenge the state's version of what happened inside that Fort Benton apartment in 2009, the Court agrees with Judge Johnston's determination that it fails to squeeze him through the narrow actual innocence gateway to excuse his Petition's untimeliness under AEDPA.  Indeed, as the Ninth Circuit noted in a recent memorandum disposition,

"if a habeas petitioner's own testimony disputing that he committed a crime were enough to satisfy the actual innocence gateway's 'exacting' standard, that gateway would be open in nearly every case, not 'only in the extraordinary' case." *Pratt v. Filson*, 705 Fed. App'x 523, 526 (9th Cir. 2017).

### B.    Extraordinary Circumstances

In his Objection to the Findings and Recommendation, Paulsrud also alludes to the equitable tolling paradigm established in *Holland v. Florida*[3] to save his otherwise untimely Petition.  (Doc. 11 at 2, 6.)  "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649.  It should be noted that this issue is distinct from the one raised by procedural default, which "ask[s] whether *federal* courts may excuse a petitioner's failure to comply with a *state court's* procedural rules, notwithstanding the state court's determination that its own rules had been violated." *Id.* at 650 (emphasis in original).  Equitable tolling, in contrast, "asks whether federal courts may excuse a petitioner's failure to comply with *federal* timing rules, an inquiry that does not implicate a state court's interpretation of state law." *Id.*  Here, Paulsrud says, the injuries from his self-inflicted gunshot wound which rendered him unable to speak at trial, combined

---

[3] 560 U.S. 631 (2010).

with a "pill induced daze throughout" the proceedings, operate as the "extraordinary circumstance" that should excuse him from failing to file his Petition within AEDPA's one-year statute of limitations.  (Docs. 8 at 5; 11 at 2.)

However, in both his Show Cause Response and his Objection to the Findings and Recommendation, Paulsrud is explicit: the mental incompetency he alleges "was during the actual trial stage of state proceedings, not at Post Conviction."  (Doc. 11 at 4.)  At most, he says that it was after his "first months at the prison" that he was able to "correspond [] properly and with a full mental coherence of what occurred."  (Doc. 8 at 2.)  Again, a jury convicted Paulsrud on March 16, 2011, and the Montana Supreme Court affirmed the conviction on August 21, 2012.  *Paulsrud I*, 285 P.3d 505, 506, 509.  More than another year passed before his federal habeas deadline expired on November 11, 2013.  *See Bowen*, 188 F.3d at 1158–59.

The Court understands the merits of Paulsrud's argument as it relates his competence to stand trial, but he makes no showing as to why his admittedly limited period of incoherence—during trial and continuing into his "first months at the prison"—operates as an extraordinary circumstance to excuse his failure to timely file his federal habeas petition for more than a year after his conviction became final.  Moreover, the seven years that passed between Paulsrud's conviction becoming final and his filing for habeas relief in State court fails to

convince the Court that he has been diligently pursuing the rights he advances

here.  *C.f. Guillory v. Roe*, 329 F.3d 1015, 1018 (9th Cir. 2003) (court finds lack of

diligence where petitioner took twenty-seven months to present claims to the state

court and seven months after that court's decision to return to the federal court).

Thus, the Court concludes that Paulsrud has failed to establish his entitlement to

equitable tolling under the *Holland* framework.

Furthermore, where the petitioner fails to demonstrate an extraordinary

circumstance that prevented him from timely filing his federal petition and the

record reflects no evidence of diligence, no evidentiary hearing is necessary to

resolve the equitable tolling issue.  *See Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir.

2006).  But even if Paulsrud was arguably eligible for equitable tolling, the Court

agrees that his claims are procedurally defaulted and must be dismissed anyway.

## II.    Procedural Default

Paulsrud does not object to Judge Johnston's analysis in the Show Cause

Order that his claims appear to be procedurally defaulted, and reviewing for clear

error, the Court agrees.  (*See* Doc. 5 at 5–8.)  That is, because Montana's

procedural rules bar consideration of Paulsrud's otherwise unexhausted claims,

they are "technically exhausted but will be deemed procedurally defaulted unless

[Paulsrud] can show cause and prejudice."  *Cooper v. Neven*, 641 F.3d 322, 327

(9th Cir. 2011).  Paulsrud argues that cause is established for the same reason he is

entitled to equitable tolling, *supra*.  (Doc. 8 at 5.)  Specifically, "[t]he [o]bjective factor external to [his] defense that prevented him from raising his claims in State Court is [his] prolonged inability to communicate with the upper half of his jaw and face missing."  (Doc. 8 at 5; *see also* Doc. 11 at 6.)  Paulsrud makes no argument as it relates to prejudice, apart from stating he "has shown both cause and prejudice that requires the requested relief."  (Doc. 11 at 6.)

"Ordinarily," the Ninth Circuit has explained, "cause to excuse procedural default exists if the petitioner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Cook v. Schriro*, 538 F.3d 1000, 1027 (9th Cir. 2008) (citation and internal quotation marks omitted).  For example, cause may be established by "a showing that the factual or legal basis for a claim was not reasonably available to [post-conviction relief] counsel, or that some interference by officials made compliance impracticable." *Id.* (citation and internal quotation marks omitted).  Meanwhile, a petitioner's mental condition fails to establish cause, "at least when the petitioner on his own or with assistance remains able to apply for post-conviction relief to a state court." *Schneider v. McDaniel*, 674 F.3d 1144, 1154 (9th Cir. 2012).

While the Court is sympathetic to the physical consequences of Paulsrud's self-inflicted gunshot wound, it agrees with Judge Johnston that he has failed to demonstrate how his facial injuries prevented him from complying with Montana's

procedural rules.  True, Paulsrud indicates that he "had to have prison inmates help him with this matter, due to his inability to read details or comprehend any of the legal aspects of the law."  (Doc. 8 at 8.)  And, he says that the "ADA inmate for [l]egal assistance" helped him draft his Objections to the Findings and Recommendation.  (*Id.*)

But the fact that Paulsrud requires drafting assistance and that he is untrained in the law is not enough to establish cause.  *C.f. Schneider*, 674 F.3d at 1154 (A petitioner might demonstrate cause by showing that his condition rendered him "completely unable" to comply with a state's procedures and that he had no assistance."); *see also Hughes v. Idaho Bd. of Corrections*, 800 F.2d 905, 908 (9th Cir. 1986) (A petitioner does not establish cause where procedural default resulted from his illiteracy and the loss of legal assistance by another inmate.").  Notably, while Paulsrud's injuries may have rendered it difficult for him to communicate verbally, his filings in this case and in his untimely habeas petitions to the state courts demonstrate that he is fully capable of communicating in writing.

In sum, the Court agrees with Judge Johnston that the objective factor Paulsrud cites to establish cause is insufficient to excuse his procedurally defaulted claims.  Without cause shown, the Court need not reach the question of prejudice.  *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

Additionally, for the same reasons discussed in the context of the federal statute of limitations, the Court is not convinced that Paulsrud's claim of actual innocence is sufficient to "pass through the procedural gateway of *Schlup*" to excuse his procedural default either.  *See Smith v. Baldwin*, 510 F.3d 1127 1140–41 (9th Cir. 2007) (In order to overcome procedural default, the petitioner must show that "in light of all available evidence, it is more likely than not that no reasonable juror would convict him of the relevant crime.").  And because Paulsrud fails to overcome the procedural obstacles outlined above, the Court cannot reach the merits of his claims.  *Schlup*, 513 U.S. at 314.

## III.    Certificate of Appealability

Judge Johnston recommends denying Paulsrud a COA.  (Doc. 10 at 13–14.) Where, as here, claims are dismissed on procedural grounds, the Court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Gonzalez v. Thaler*, 656 U.S. 134, 140–41 (2012) (citation omitted).  The Court agrees with Judge Johnston that this case is not appropriate for the issuance of a COA, and it will be denied.

## ORDER

For the foregoing reasons, the Court agrees with Judge Johnston that Paulsrud's claims should be dismissed with prejudice as untimely and procedurally defaulted without excuse.

Accordingly, IT IS ORDERED that the Court ADOPTS Judge Johnston's Findings and Recommendation (Doc. 10) IN FULL.

IT IS FURTHER ORDERED that the Petition (Doc. 1) is DISMISSED with prejudice, and the Motion (Doc. 12) is DENIED as moot.

IT IS FURTHER ORDERED that a COA is DENIED.

Finally, IT IS ORDERED that the Clerk of Court shall enter by separate document judgment in favor of Respondents and against Petitioner.

DATED this 9th day of June.

Dana L. Christensen, District Judge
United States District Court